# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TREVOR CARMEAN, on behalf of himself and all others similarly situated, ) ) ) ) Plaintiff, ) ) vs. ) ) 850 INVESTORS LLC dba 850 LAKE SHORE, ) DRIVE; THE LARAMAR GROUP LLC; ) GREYSTAR ILLINOIS MANAGEMENT, LLC; ) BOZZUTO MANAGEMENT COMPANY; and ) CROWN BUILDING MAINTENANCE CO., ) d/b/a ABLE SERVICES, ) ) Defendants. ) ) | Case No. 2020-cv-05294 Hon. Judge Gary Feinerman |

**DEFENDANT, CROWN ENERGY SERVICES, INC.'S,
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant, Crown Energy Services, Inc., d/b/a Able Engineering Services (incorrectly sued as Crown Building Maintenance Co.), through its attorneys, O'Hagan Meyer, LLC, hereby submits its Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Federal Rule 12(b)(6). In support thereof, Defendant states as follows:

## Introduction

This case is yet another of well over 500 putative class actions filed against private entities in the State of Illinois under the Biometric Information Privacy Act ("BIPA") (740 ILCS 14/1 *et seq*). This ubiquitous BIPA lawsuit filed by Plaintiff Trevor Carmean, like nearly all others like it filed over the last five years, alleges violations of BIPA against his employer, Crown Energy Services, Inc., doing business as Able Engineering Services ("Able"), among others. Plaintiff

1

brings the lawsuit on behalf of a purported class of individuals who "are or were employed at 850 Lake Shore Drive, and whose fingerprint is or was collected, captured or otherwise obtained by the owners or managers of the building at 850 N. Lake Shore Drive[.]" (Doc. 1, ¶ 33).

Able now moves to dismiss the Class Action Complaint as Plaintiff's BIPA claims are barred as a matter of law and legally deficient in the following ways: (1) Plaintiff's BIPA claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq.*; (2) Plaintiff's BIPA claims are barred by Illinois' one-year statute of limitations; (3) Plaintiff fails to adequately plead subject matter jurisdiction under CAFA; and (4) Plaintiff fails to state any cause of action against Able under BIPA. For these reasons and those that follow, this Court should grant Able's motion to dismiss and enter an order dismissing Able from this matter with prejudice.

## Background

Plaintiff Trevor Carmean was employed by Able as a Head Janitor at the building located at 850 N. Lake Shore Drive in Chicago, Illinois ("the 850 Building") from December 1, 2018 through December 27, 2019. See Declaration of Russell Hale, attached hereto as ***Exhibit A***, ¶¶ 4-5. Over the past five years, Able has only employed eleven individuals at the 850 Building. (Ex. A, ¶ 4). Carmean is a member of the Service Employees International Union, Local 1 ("the Union"). (Ex. A, ¶ 7). As a member of the Union, Carmean's employment was subject to the terms and conditions of a collective bargaining agreement ("CBA") between Able and the Union, and the Union was Carmean's sole and exclusive bargaining representative. (Ex. A, ¶¶ 7-8). The CBA applies to all employees of Able within certain job classifications, including the Head Janitor position previously filled by Carmean. (Ex. A, ¶ 9). As a result, any employment-related dispute

between Carmean and Able is governed by the CBA's multi-step grievance and arbitration procedures. (Ex. A, ¶ 11).

In this lawsuit Carmean claims that Defendants – who are all supposedly "owners and managers" of the 850 Building – captured and retained his fingerprints each time he scanned his fingerprint on a KeyTrak scanner that was used to open a system that contained keys to access rooms and units in the Building. (Doc. 1, ¶¶ 1-2, 5, 17). Carmean alleges that he and the other putative class members scanned their fingers an average of ten times per day, and that during this time all Defendants failed to provide written notice regarding the collection, retention, and disclosure of Plaintiffs' biometric data, and failed to obtain their informed written consent to the same in compliance with BIPA. (Doc. 1, ¶¶ 25, 27, 29-30). Finally, Carmean asserts that the KeyTrak "fingerprint database" was "essentially open to large numbers of the Defendants' employees, agents, and subcontractors", and so Defendants allegedly failed to store, transmit, and protect Plaintiffs' biometric data in the same way they would other sensitive information. (Doc. 1, ¶ 32). Carmean asserts a single cause of action under BIPA pursuant to Sections 15(a), 15(b), 15(d), and 15(e) of BIPA. (Doc. 1, ¶¶ 40-43).

## **Argument**

**I. Plaintiff's BIPA Claims are Barred as Preempted by Section 301 of the LMRA.**

Over the past several months, every Illinois federal court to weigh in on the issue of whether state law BIPA claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA") has followed the reasoning of the Seventh Circuit's decision in *Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), and held in favor of preemption. Illinois federal courts are unanimous that the LMRA preempts if the relationship of parties to litigation is governed by a collective bargaining agreement. See, e.g., *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942,

2020 WL 919202, at *1 (N.D. Ill. Feb. 26, 2020); *Gray v. Univ. of Chicago Med. Ctr., Inc.*, No. 19-cv-04229, 2020 WL 1445608, at *1 (N.D. Ill. Mar. 26, 2020); *Fernandez v. Kerry, Inc.*, No. 17 C 8971, 2020 WL 1820521, at *1 (N.D. Ill. Apr. 10, 2020); *Fox v. Dakkota Integrated Systems, LLC*, No. 19-cv-2872, at 1 (N.D. Ill. May 26, 2020); and *Williams v. Jackson Park SLF, LLC*, 2020 WL 5702294, at *1 (N.D. Ill. Sept. 24, 2020).

Each of these federal decisions clearly and unequivocally agrees that a BIPA dispute between two parties to a CBA cannot be resolved without the interpretation or administration of the CBA's provisions that address such things as management rights, work and pay, and grievance and arbitration. See *Fernandez*, 2020 WL 1820521, at *6 ("it is not possible to resolve a BIPA dispute over fingerprint time clocks without reference to the collective bargaining agreement … [which] necessarily requires interpretation of the collective bargaining agreement"). Illinois federal courts have also uniformly declined to engage in an examination of whether a CBA at issue addresses the use of biometric clocks, or whether there is evidence that a defendant complied with BIPA's statutory requirements with respect to the unions, following the Seventh Circuit's admonition in *Miller* that "[w]hat Southwest told the union, whether it furnished that information in writing, when these things happened, and what the union said or did in response, ***are matters not in this record. They are properly not in this record, as they are topics for resolution by an adjustment board rather than a judge***." *Miller*, 926 F.3d at 904 (***emphasis added***). Notably, the Seventh Circuit's analysis in *Miller* applies equally to CBAs covered by the LMRA and the RLA, as the preemption analysis is "nearly identical." See *Fernandez*, 2020 WL 1820521, at *6.

In this case, Trevor Carmean's BIPA claims against Able are preempted because his employment with Able is governed by a CBA, and resolution of such claims ***necessarily requires*** the interpretation or administration of the CBA's provisions that address management rights and

4

grievance and arbitration. In both *Peatry* and *Gray*, the plaintiffs were covered by CBAs and their BIPA claims required interpretation of the management rights clauses of those agreements via arbitration, and not by the courts that lacked jurisdiction to do so. *Peatry*, 2020 WL 919202, at *4; *Gray*, 2020 WL 1445608, at *4-5. In *Peatry*, the court held that Section 301 of the LMRA *does* preempt BIPA claims for the time period when a CBA involving a BIPA defendant and BIPA plaintiff was in effect because resolution of the statutory claims under BIPA requires interpretation of the CBA itself. *Peatry*, 2020 WL 919202, at *3. In *Gray*, the court affirmed the applicability of *Miller*'s preemption ruling and the reasoning of the court in *Peatry*. *Gray,* 2020 WL 1445608, at *1. The *Gray* court found the BIPA claims were preempted because plaintiff failed to exhaust her administrative remedies under the CBA before bringing suit, which warranted dismissal. *Id.* at *5.

In *Fernandez*, the court found federal question jurisdiction and denied remand because "plaintiffs' BIPA claim necessarily requires interpretation of the collective bargaining agreement," and therefore was preempted by § 301 of the LMRA. *Fernandez*, 2020 WL 1820521, at *6. Despite the *Miller* court's focus on the RLA, the *Fernandez* court found *Miller* was directly on point because "the Supreme Court has said the preemption standard is essentially the same under either [the RLA or the NLRA]." *Id.* (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994)). The *Fernandez* decision went on to summarize that "the important point is that the Seventh Circuit [in *Miller*] has concluded that ***it is not possible to resolve a BIPA dispute over fingerprint time clocks without reference to the collective bargaining agreement***. Because plaintiffs' BIPA claim necessarily requires interpretation of the collective bargaining agreement, it is preempted by § 301 of the LMRA." *Fernandez*, 2020 WL 1820521, at *6 (***emphasis added***).

And in *Williams v. Jackson Park*, plaintiff's union and defendant were signatories to a CBA. *Williams*, 2020 WL 5702294, at *1. Just like Trevor Carmean's employment with Abel in

5

this case, the CBA at issue in *Williams* contained a management rights clause and included a grievance procedure. *Id.* The plaintiff in *Williams* tried to refute preemption by arguing that his union cannot waive his statutory rights under BIPA, and the CBA did not address the use of biometric information. *Id.* at 3. The *Williams* court rejected both of these arguments and dismissed plaintiff's lawsuit based on both the Seventh Circuit's decision in *Miller v. Southwest* and on the plain text of BIPA that allows authorized agents, such as unions, to act on union members' privacy rights. *Id.* at 2-3, citing *Miller,* 926 F.3d at 903-904.

Here, Able's employment of Trevor Carmean and other members of the putative class was governed by a CBA between the Union and Abel. (Ex. A, ¶¶ 7-11). The CBA has been in effect between since December 2017, prior to when Carmean was first hired by Abel. (Ex. A, ¶ 8). The CBA specifically applies to janitorial staff, including the position of Head Janitor, directly contemplates the procedures, methods, and equipment to be utilized by these employees, and sets forth a grievance and arbitration system to resolve any "complaint, grievance or dispute concerning or arising from the application of this Agreement [the CBA] or directly related thereto[.]" (Ex. A, ¶¶ 9-11). Abel and the Union bargained for Article XVI of the CBA, which sets forth a "Management Rights" clause which states that Able retains the authority to manage its business, control its premises, and direct its work force. (Ex. A, ¶ 10). The Union is the sole and exclusive bargaining agent for Trevor Carmean and other members of the putative class who are Union members. See *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2460 (2018); *Crooms*, 2020 U.S. Dist. LEXIS 84360, at *13.

Resolution of the BIPA claims at issue directly depends upon and is inextricably bound up in the interpretation or administration of the terms and conditions of the CBA between Abel and the Union. Because Plaintiffs' BIPA claims are predicated on rights addressed by the management

6

rights and grievance and arbitration provisions of the CBA, which necessarily requires examination of the CBA, Plaintiffs' BIPA claims against Abel are preempted by federal labor laws and must be dismissed. As all Illinois federal courts agree, any dispute about whether certain matters pertaining to BIPA were bargained for by the Union, or whether certain matters under BIPA are subject to the CBA, cannot be resolved without examining the CBA and directly implicates preemption under Section 301 of the LMRA. Ultimately, any dispute between Carmean and Abel must be resolved through the grievance and arbitration procedures set forth in the CBA, not via litigation in this Court. As such, this Court should now dismiss this lawsuit against Abel because Plaintiffs' BIPA claims infringe upon, and are preempted by, the LMRA, and Plaintiffs' employment dispute with Abel must be resolved through the grievance and arbitration procedures set forth in the CBA.

**II. Illinois' One-Year Statute of Limitations Applies and Bars Plaintiff's BIPA Claims.**

Although BIPA does not set forth a statute of limitations, this court should dismiss Plaintiff's BIPA claims because they fall outside the applicable one-year statutory period for actions involving an alleged invasion of privacy with publication. 735 ILCS 5/13-201. Since Plaintiff's BIPA claims accrued when he first provided his alleged biometric data to Able at the start of his employment in December 2018 (Ex. A, ¶ 5), and Plaintiff did not file suit until September 2020, his BIPA claims are barred by Illinois' one-year limitations period.

A BIPA violation is analogous to a claim for the invasion of privacy with publication, which, in Illinois, is subject to the state's one-year statute of limitations period. Section 13-201 of the Illinois Code states that "actions for … ***publication*** of matter violating the ***right of privacy*** shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13-201. (***emphasis added***). In *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352 (Ill.

7

2006), the Illinois Supreme Court addressed the definition of "right of privacy" in an insurance policy. *Id.* at 366-68. Since the term was not defined in the insurance policy at issue, the Supreme Court provided the term its "plan, ordinary, and popular meaning" based on common dictionary definitions, and went on to conclude that "[t]hese definitions confirm that 'right of privacy' connotes both an interest in seclusion and an interest in the secrecy of personal information." *Id.* at 368.

Relatedly, in *Rosenbach v. Six Flags*, the Illinois Supreme Court declared that, "[t]hrough [BIPA], our General Assembly has codified that individuals possess a ***right of privacy*** in and control over their biometric identifiers and biometric information… [.]" *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33. Drawing upon the Supreme Court's analysis in *Valley Forge*, the Illinois Appellate Court recently held in a BIPA insurance coverage action that the term "publication" "clearly include[s] both the broad sharing of information to multiple recipients … ***and a more limited sharing of information with a single third party***." *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2020 IL App (1st) 191834, ¶ 35, citing the Oxford English Dictionary's definition of "publication" ("*Law*. Notification or communication to a third party or to a limited number of people regarded as representative of the public.").

In this case, the language of the Illinois Code and Illinois court interpretations of BIPA and the definitions of "publication" and "right to privacy," combined with Plaintiff's own allegations, make clear that this BIPA lawsuit directly concerns the publication of matter involving Plaintiff's right to privacy. By claiming that Abel provided Plaintiff's private biometric data to other "management companies," Plaintiff alleges that Abel engaged in the publication of matter violating his right of privacy – conduct that is explicitly governed by Illinois' one-year limitations

period. As a result, Plaintiff's BIPA claims are subject to and barred by Illinois' one-year statute of limitations.

Moreover, Plaintiff's claims "accrued" for purposes of the statute of limitations when he was first enrolled in the key storage system at issue when he was hired in December 2018. *See, e.g.*, *Cothron v. White Castle System, Inc.*, 2020 WL 4569694, at *4-5 (N.D. Ill. Aug. 7, 2020) (holding that defendant "violated Section 15(b) when it first scanned [plaintiff's] fingerprint and violated Section 15(d) when it first disclosed her biometric information to a third party"). In *Cothron*, the Illinois federal court recently declared that Illinois' continuing violation doctrine, which is an exception to the general rule of accrual for the statute of limitations, does ***not*** apply to BIPA actions because "Sections 15(b) and 15(d) impose obligations that are violated through discrete individual acts, not accumulated courses of conduct." *Cothron*, 2020 WL 4569694, at *4. Moreover, "[t]he injuries resulting from these violations do not need time to blossom or accumulate. Time may exacerbate them, but an injury occurs immediately upon violation." *Id.*; see also, *Feltmeier v. Feltmeier*, 207 Ill. 2d 263 (2003) (an action "accrues" when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused).

This interpretation and decision by the *Cothron* court harmonizes well with the plain language of the BIPA statute, which clearly indicates that a BIPA violation accrues when a private entity "collects" an individual's biometric data "unless it first" gives the required notices and "receives a written release" from the individual. *See* 740 ILCS 14/15. Here, the pleadings demonstrate that Plaintiff knew or should have known of an injury to his privacy rights under BIPA as of the date his finger scan was supposedly first provided in December 2018. However, Plaintiff did not bring his BIPA lawsuit until September 2020, which falls beyond Illinois' one-

9

year limitations period for violations to an individual's privacy rights, so his BIPA claims are now time barred.

**III. Plaintiff Fails to Adequately Allege Subject Matter Jurisdiction under CAFA.**

The pleading deficiencies of Plaintiff's Complaint call into question whether this Court has subject matter jurisdiction over this proposed class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). CAFA extends federal diversity jurisdiction over class actions under Federal Rule 23 where: (1) any member of the proposed class is a citizen of a state different from any defendant (*i.e.*, minimal diversity exists); (2) the proposed class consists of more than 100 members; and (3) the aggregate sum of all plaintiffs' claims in controversy is $5,000,000 or more. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). Federal Rule 8(a)(2) requires that each claim in a pleading be supported by "a short and plain statement of the claim showing that the pleader is entitled to relief [.]" Fed.R.Civ.P. 8(a)(2).

In this matter the Complaint alleges that subject matter jurisdiction is proper under Section 1332(d)(2) of CAFA, "because the parties and putative class members are minimally diverse and the aggregate amount in controversy is greater than $5,000,000." (Doc. 1, ¶ 12). Plaintiff further proposes a class definition that consists of:

> "***All persons in the United States who are or were employed at 850 Lake Shore Drive***, and whose fingerprint is or was collected, captured or otherwise obtained ***by the owners or managers of the building*** located at 850 N. Lake Shore Drive, at any time from four years before the date of Plaintiff's original complaint to the date the class is certified." (Doc. 1, ¶ 33 (***emphasis added***)).

However, Plaintiff pleads nothing in the Complaint to show that he can satisfy CAFA's 100-person requirement. Plaintiff's numerosity allegations merely state that, "[o]n information and belief, the Class is so numerous that joinder is impracticable. While the exact number is unknown, Plaintiff believes that Defendants have saved hundreds of fingerprint scans of their various

10

employees, without written releases." (Doc. 1, ¶ 34). Nothing in the Complaint speaks to how many individuals make up the proposed class, instead Plaintiff only alleges information pertaining to the $5,000,000 amount in controversy requirement. Significantly, Able itself only ever had eleven total employees at the 850 Building over the past several years (Ex. A, ¶ 4); far short of the 100-person requirement. And while Abel recognizes there are other defendants in this proposed class action, the Complaint does not specify if all named-defendants are "owners or managers of the building" as stated in the proposed class definition (Doc. 1, ¶ 33), and does not allege how many individuals Plaintiff believes comprise the putative class. For these reasons, the Complaint simply fails to provide the requisite facts and legal clarity to demonstrate that this Court has subject matter jurisdiction over this matter pursuant to CAFA.

**IV. Plaintiff's BIPA Claims are Facially Deficient and Must be Dismissed.**

The Complaint lacks any meaningful factual content to indicate that Able, *specifically*, violated Sections 15(a), 15(b), 15(d), or 15(e) of BIPA. In accordance with United States Supreme Court precedent in *Twombly* and *Iqbal*, a complaint must also contain sufficient factual content "to state a claim to relief that is plausible on its face…" (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers "labels and conclusions, ... a formulaic recitation of the elements of a cause of action[,]" or "naked assertion[s]" devoid of "further factual enhancement" will not suffice. *Twombly,* 550 U.S. at 555, 557. A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…" *Iqbal,* 556 U.S. at 678 (citation omitted). Furthermore, it is beyond dispute that a plaintiff carries the burden of pleading particularized allegations against *each individual defendant* to a lawsuit.

11

See *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (affirming dismissal where "formulaic recitations" that all parties were liable did "not put the defendants on notice" as to what they did). In this case, Plaintiff's claims must be dismissed because Plaintiff fails to allege in any meaningful or substantive way that Able itself ever actually possessed, received, or retained Plaintiff's alleged biometrics, or somehow disclosed Plaintiff's biometrics to some third party.

**A. Plaintiff Does Not Adequately Plead a Violation of Section 15(a).**

Plaintiff alleges that Defendants violated Section 15(a) of BIPA by not "provid[ing] any policy establishing either a retention schedule or guidelines for permanently destroying the biometric data[.]" (Doc. 1, ¶ 25). However, Section 15(a) of BIPA does *not* require a private entity to "provide" anything, so Plaintiff's claim under Section 15(a) falls short on that basis alone. The word "provide" actually does not appear anywhere in Section 15(a) of BIPA, and therefore cannot form the basis of a properly pled Section 15(a) claim. Section 15(a) of BIPA merely requires an entity that comes into possession of biometric information to "create or produce" a written retention policy after coming into possession of such information. Nowhere in Section 15(a) is there a requirement that a private entity in possession of biometric information "provide" any particular individual anything at all – including a retention schedule and guidelines for the destruction of biometric identifiers and information. *See, generally,* 740 ILCS 14/1, *et seq.* As the Seventh Circuit recently held, "the duty to disclose under section 15(a) is ***owed to the public generally, not to particular persons*** whose biometric information the entity collects." *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020) (***emphasis added***). Plaintiff's allegations that Defendants failed to "provide" something seeks to impose a requirement on Defendants that does not exist under Illinois law. Defendants' statutory obligation under Section

12

15(a) is confined to the development and public availability of a retention policy, so Plaintiff's Section 15(a) BIPA claim fails to state a cause of action and must be dismissed.

**B. Plaintiff Does Not Adequately Plead Violations of Section 15(b) or 15(b).**

Aside from conclusory allegations and pure speculation, Plaintiff provides no basic facts to indicate that Able, specifically, took any active steps to collect, obtain, or otherwise disclose Plaintiff's biometric data, which is fatal to his claims under Sections 15(b) and 15(d). In *Heard v. Becton, Dickinson & Co.*, the court held that a BIPA claim under Section 15(b) requires, at a minimum, allegations that a defendant ***took an "active step"*** to collect or obtain biometric data, and that a plaintiff cannot sustain a claim under either Section 15(a) or Section 15(d) if the plaintiff fails to adequately plead "possession" of biometric data. *Heard*, 2020 WL 887460, at *7, 10-11 (N.D. Ill. Feb. 24, 2020). Here, Plaintiff is not permitted to universally allege that *all* Defendants supposedly collected biometric data without alleging which defendants had access to or control over the KeyTrak system at issue, how or when any such biometric data was collected, how or why such data might have disclosed and to whom, or any other basic details. Plaintiff has not alleged sufficient facts to support an inference, let alone a plausible conclusion, that Able was ever actually "in possession" of biometric data, which is a prerequisite to triggering statutory obligations under BIPA.

Moreover, the *Heard* court dismissed the plaintiff's Section 15(d) BIPA claim because it founds that plaintiff was "not entitled to plead disclosure based upon information and belief," and plaintiff's complaint contained "no allegations of fact which, if true, suggest there is any basis to even *suspect* that [defendant] disseminated the biometric data at issue." *Heard*, 2020 WL 887460, at *6. In *Heard*, as in this case, the plaintiff's Section 15(d) claim was ripe for dismissal because

the allegations "merely parrot' the BIPA's statutory language; they do not provide any 'specific facts to ground [plaintiff's] legal claims." *Id.* Thus, the *Heard* court was "not required to credit rank speculation" and went on to grant defendant's motion to dismiss. *Id.*; see also, *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (plaintiff failed to state a claim under BIPA Section 15(d) where plaintiff merely alleged on information and belief that defendant disclosed her biometric information to third parties without any further factual support to plausibly suggest that her biometric information was disseminated).

Plaintiff's Section 15(d) allegations against Abel are just as deficient. Plaintiff's *only* allegation of disclosure states that "[e]ach time a new management company took possession of the fingerprint database, the previous management company and the building owner disclosed, re-disclosed, or otherwise disseminated the biometric information." (Doc. 1, ¶ 29). Plaintiff does not allege that Able is a "management company", and does not allege that Abel is a "management company" that ever took over work at the building from any another company. Plaintiff also provides no factual allegations as to *how* such information was disclosed to any third party, *who* the alleged third parties are, *when* or under *what circumstances* such information was disclosed to any third party, or *for what reason* any such information was disclosed. In short, Plaintiff's speculative and conclusory pleadings contain zero factual context and simply parrot the statutory language of BIPA, which is insufficient to avoid Abel's motion to dismiss.

As the court stated in *Heard*, if Plaintiff here had an actual "legitimate reason to suspect" that any Defendant disclosed his biometric data, then he "surely possesses information of some kind that triggered [his] suspicion." *Heard*, 2020 WL 887460, at *6. That is apparently not the case for Plaintiff Trevor Carmean, as he has not alleged any facts to support an inference, let alone a plausible conclusion, that Able disclosed or disseminated his supposed biometric data. Plaintiff's

14

sparce and inadequate pleadings are just as legally insufficient as those dismissed by the court in *Heard* and *Namuwonge*. Once this Court disregards all of Plaintiff's unsupported legal and factual conclusions, there is little reason for the Court to entertain Plaintiff's baseless claim under Section 15(d), which should now be dismissed.

### C. Plaintiff Does Not Adequately Plead a Violation of Section 15(e).

Plaintiff attempts to allege that Abel violated Sections 15(e)(1) and 15(e)(2) of BIPA. In a single paragraph of the Complaint, Plaintiff claims that Abel collected and stored his biometric data in a manner that does not comport with the reasonable standard of care within the industry, and that Able failed to protect its biometric data in a manner that was the same as, or more protective than, the manner in which it stores, transmits, and protects other sensitive information. (Doc. 1, ¶ 31). However, these claims fail because the Complaint fails to provide any basic factual allegations or information as to what exactly the standard of care for protecting and storing biometric information is, and more importantly, how exactly Able failed to comport with this standard of care for protecting and storing biometrics, if it ever collected biometrics in the first place. Plaintiff's pleadings again just parrot the language of the BIPA statute and fail to satisfy this Court's minimum pleading standards. The one paragraph of the Complaint that addresses Section 15(e) fails to provide Able with notice of how it purportedly violated BIPA, therefore Plaintiff failed to meet his pleading obligations and all claims under Section 15(e) must be dismissed.

### Conclusion

**WHEREFORE**, Defendant, Crown Energy Services, Inc., respectfully requests that this Honorable Court grant its Motion to Dismiss and enter an Order pursuant to Federal Rule 12(b)(6) dismissing Plaintiff's Class Action Complaint with prejudice. Defendant further requests any other relief that the Court deems necessary and proper.

15

                Respectfully submitted,

                O'HAGAN MEYER, LLC

                By:   */s/ Collin D. Woodward*
                        One of the Attorneys for Defendant

Jamie L. Filipovic
Collin D. Woodward
O'Hagan Meyer, LLC
One East Wacker, Suite 3400
Chicago, IL 60601
jfilipovic@ohaganmeyer.com
cwoodward@ohaganmeyer.com