**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TREVOR CARMEAN, on behalf of himself and all others similarly situated, ) ) ) ) Plaintiff, ) ) vs. ) ) 850 INVESTORS LLC dba 850 LAKE SHORE, ) DRIVE; THE LARAMAR GROUP LLC; ) GREYSTAR ILLINOIS MANAGEMENT, LLC; ) BOZZUTO MANAGEMENT COMPANY; and ) CROWN BUILDING MAINTENANCE CO., ) d/b/a ABLE SERVICES, ) ) Defendants. ) ) | Case No. 2020-cv-05294 Hon. Judge Gary Feinerman |

## DECLARATION OF RUSSELL HALE

I, Russell Hale, pursuant to 28 U.S.C. § 1746, hereby declare that if called as a witness in this proceeding would testify of my own personal knowledge as follows:

1. I am the Human Resources Business Partner for Crown Energy Services, Inc., d/b/a Able Engineering Services ("Able Engineering"), which provides building engineering services.

2. I am an adult competent to testify in a court of law, and I have personal knowledge of the statements made in this affidavit based upon my work for Able Engineering, and my review of records that Able Engineering maintains in the ordinary course of business.

3. I have reviewed the pleadings filed in the case of *Trevor Carmean v. 850 Investors, LLC, et al.*, case number 2020-cv-05294, currently pending in the U.S. District Court for the Northern District of Illinois. Based upon my review of the pleadings, I am aware of the allegations

**EXHIBIT A**

Trevor Carmean has made on behalf of himself and a putative class of similarly-situated employees.

4. Over the past five years, Able Engineering has employed a total of eleven (11) individuals, including Trevor Carmean, at the building located at 850 N. Lake Shore Drive, Chicago, Illinois ("the 850 Building").

5. Trevor Carmean was employed by Able Engineering at the 850 Building with the title of Head Janitor from December 1, 2018 through December 27, 2019.

6. Crown Building Maintenance Co. is an entirely separate corporate entity from Able Engineering. Trevor Carmean was never an employee of Crown Building Maintenance Co.

7. Trevor Carmean and members of the putative class are or were represented for purposes of collective bargaining by the Service Employees International Union, Local 1 ("the Union"), whereby the Union is the sole and exclusive bargaining representative for those individuals.

8. The Union and its members are parties to a collective bargaining agreement ("CBA") with Able Engineering that was negotiated by these parties and governs the terms and conditions of employment for all individuals that belong to the Union, including Trevor Carmean and members of the putative class. A true and correct copy of excerpts of the CBA for the time period of December 1, 2017 through November 30, 2020 is attached hereto as "***Exhibit 1***."

9. The CBA applies to all employees of Able Engineering within certain job classifications, including the Head Janitor role. (Ex. 1, Art. II, § 1(g)). Therefore, the CBA applies to Trevor Carmean and members of the putative class who are or were employed by Able Engineering and covered under the terms and conditions of the CBA.

10. The parties to the CBA agreed on a Management Rights provision which states:

"The management of the premises, the direction of the work force and the authority to execute all of the functions and responsibilities of management including, but not limited to, the right to schedule the work to be performed and the assignment of employees to such work, the control and regulation of all equipment and other property of the Employer, the determination, establishment and enforcement of reasonable published rules of safety and conduct, and the right to maintain discipline and efficiency of all employees, are all vested exclusively in the Employer, except that such rights, functions and responsibilities are subject to and shall not be exercised in such manner as to conflict with any of the provisions of this Agreement." (Ex. 1, Art. XVI).

11. The CBA contains a multi-step grievance and arbitration procedure for the resolution of disputes arising under the CBA. (Ex. 1, Art. XV). The parties to the CBA are required to follow Article XV of the CBA to resolve any "complaint, grievance or dispute concerning or arising from the application of this Agreement [the CBA] or directly related thereto," including the CBA's Management Rights clause. (Ex. 1, Art. XV, § 2). The final step in the grievance and arbitration procedure calls for final and binding arbitration. (Ex. 1, Art. XV, § 6).

**FURTHER DECLARANT SAYETH NOT.**

I, Russell Hale, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of November, 2020.   _____
                                            Russell Hale

AGREEMENT

Between

SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 1

Residential Division

and

INDEPENDENT HIGHRISE APARTMENT

Covering

JANITORS IN
FIREPROOF APARTMENT
BUILDINGS

Effective December 1, 2017 - November 30, 2020

EXHIBIT A-1

AGREEMENT

Between

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1

Residential Division

and

INDEPENDENT HIGHRISE APARTMENT

Covering

JANITORS IN
FIREPROOF APARTMENT
BUILDINGS

Effective December 1, 2017 - November 30, 2020

PARTIES TO THE AGREEMENT

This Agreement is made and entered into effective as of December 1, 2017 by and between SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1 (The "Union") and _____ (The "Employer") acting for and on behalf of itself as Owner, Operator and/or as Managing Agent or Authorized Agent of the Owner and/or operator of the said premises, and is authorized to enter into this Agreement. It is intended that this Agreement shall constitute the Standard Agreement for Independent premises (as defined in Article II, Section 1(c) hereof) within the jurisdictional area of the Union (as defined in Article II, Section 1(b) hereof). This Agreement shall, in addition, be binding upon the successors, administrators, executors and assigns of the Employer of premises covered thereby whether such be voluntary or by operation of law.

## ARTICLE I
### Effective Date and Duration

**Section 1. Duration.** This Agreement shall become effective December 1, 2017 and shall remain in full force and effect until November 30, 2020, provided that this Agreement shall continue in full force and effect thereafter until terminated by either party giving to the other no less than sixty (60) days prior to November 30, 2020 written notice of its intention to terminate the Agreement, which notice shall be delivered in person or sent by first class mail to the other party.

1

**Section 2. Termination Procedure.** In the event that a sixty (60) day termination notice is sent by either party to the other pursuant to Article I, Section 1 hereof, the Employer and the Union shall each appoint a Representative(s) to meet jointly and engage in collective bargaining negotiations. Such negotiations shall commence promptly.

## ARTICLE II
## Definitions and Application of Agreement

**Section 1.** The following terms as used in this Agreement, unless the context indicates otherwise, shall have the following meanings and the Agreement shall have the following application:

(a) **"Notice" or "Notification".** When required by an Employer, "notice" or "notification" means written notice sent by first class mail to the Union at its main office at 111 East Wacker Drive, 17th Floor, Chicago, Illinois 60601. A copy by first class mail shall be sent to the District Office of the Union, where such exists, in the district in which the premises is located. Failure to provide timely notice to the District office will not nullify the effect of providing timely notice to the main office of the Union.

(b) **"Jurisdictional Area".** The jurisdictional area of the Union shall include but shall not be limited to buildings and premises in Cook, Kane, DuPage, Will, McHenry, Lake and Kendall counties.

(c) **"Premises".** Premises means any building/s or any complex or any project of more than one (1) building, of fireproof construction, four (4) stories or more in height, in which there are one or more flats, apartments, or units, including private garages, stores, shopping centers, offices (if any) and the like, and including all floors, hallways, stairways, basements, porches, approaches, yards, lawns and abutting sidewalks and parkways comprising the property in which employees covered by this Agreement perform services; provided, however, this Section shall not be construed to give the Union jurisdiction over any employees employed on the premises who are already represented by another union pursuant to an existing collective bargaining agreement.

(d) **"Apartment" or "Flat".** Apartment or flat means that part of the premises rented or occupied for private use by a tenant or other resident or used by the Employer.

(e) **"Specified Premises".** Specified premises in the case of such Employer means those premises that are additional premises of Employer. The Employer shall furnish to the Union, on or about October 30th of each year of this Agreement, an updated list of its buildings including a list of all specified premises covered under the Agreement. For each specified premises the Employer will provide the Union with names and addresses of the Owner or Management Representatives or Agent, the applicable Federal Employer Identification number, and the address of the premises.

(f) **"Employer".** An Employer means an Owner and any other person designated by an Owner, whether acting as a Management Agent or Representative or as the association, board or other body designated by the owners of a condominium or cooperative building, or in any other capacity, to maintain, operate and/or control "specified premises" of the Owner within the jurisdictional area of the Union, and to hire

2

and direct employees to perform "duties" covered by this Agreement in respect to such "specified premises", and/or to be responsible for the tenure, terms and conditions of such employment and/or the administration thereof.

(g) **"Employee"**. An Employee means and includes persons employed by an Employer in the following classifications:

(1) **"Head Janitor"**. Head Janitor means any employee engaged by the Employer to do the work and as a matter of routine to transmit the Employer's directions and instructions in respect to the performance of the work involved in the maintenance, cleaning, servicing, heating and operation of the premises, but such employee shall have no authority to hire, discharge, or otherwise discipline or reward other employees, to adjust their grievances, or to recommend any action in respect to discipline or their status as employees, or terms or conditions affecting their employment. An Employer may, however, authorize a Head Janitor in an emergency to direct the physical removal of any employee from the premises when the conduct of such person constitutes a hazard to the safe operation of the premises or the safety of its occupants. Whenever the term Janitor is used in this Agreement, it shall interchangeably also mean Head Janitor.

(2) **"Exclusive Service Head Janitor"**. This term refers to a Head Janitor who is employed to render services for an Employer exclusively in respect to premises at a specified location consisting of a single building or a single complex of buildings at such location and who is not permitted to service any other premises for any other employer or at another location.

(3) **"Assistant Head Janitor"**. Assistant Head Janitor means any employee who is engaged by the Employer to assist the Head Janitor in the performance of his duties and responsibilities with like availability in respect to hours and emergency situations.

(4) **"Helper A"**. Helper A means any employee engaged by the Employer to perform such duties with respect to the premises as are defined and enumerated in this Agreement.

(5) **"Helper C"**. Helper C means any employee engaged by the Employer to perform such duties with respect to the premises as are defined and enumerated in Article IV, Section 1(a)-(c) of this Agreement.

(6) **"Helper C Trainee"**. Helper C Trainee means any newly hired employee who is to be trained for a position as a Helper C. The training period may not exceed 6 consecutive months.

(7) **"Swimming Pool Attendant"**. Swimming Pool Attendant means an employee, including a lifeguard, who performs maintenance or cleaning services with respect to swimming pool operations in addition to other duties.

(8) **"Maintenance Employee and Other Job Classifications"**. Such classifications cover employees engaged by the Employer, under such job title/s as the Employer may designate, to perform primarily and on a non-seasonal basis such duties as

3

the Employer may require in respect to the physical care, maintenance and operation of the premises other than general janitorial or custodial services.

(h) **"Apparatus"**. Apparatus means appurtenances, such as boilers, furnaces, gas and oil burners, electrical heat and other heating plant devices and mechanisms, incinerators, stokers, smoke abatement devices, pumps, refrigeration machines, air conditioning equipment, elevators, vacuum cleaners, motors and ash hoists which are permanently installed in the premises, garbage and refuse disposal equipment, and other like and related equipment, the operation of which constitutes an essential adjunct in the servicing of the premises and such other appurtenances which, if not usual to the servicing of premises, shall be agreed upon between the Employer and the Union.

(i) **"Equipment"**. Equipment means appurtenances such as furnishings, carpets, cleaning devices, windows and door screens, storm doors and storm windows and similar articles commonly considered necessary to the furnishing and operation of the premises.

(j) **"Gas, Electric or Oil Heat"**. Such reference means and applies only to premises heated with gas, electric or oil and operated with automatic controls.

(k) **"Time Computations"**. All references herein to the number of days in computing time limitations shall mean calendar days, unless specified otherwise.

**Section 2. Temporary Employees.** All employees who are hired on a temporary, relief, substitute or seasonal basis shall be notified of such status at the time of hire, and the Union is to be notified of such hire within thirty (30) days. All Employees hired under this Section shall be required to secure a Union Permit if working more than 30 days. Such permits shall be fifty dollars ($50.00) per month.

(a) A "temporary" employee is an employee hired on a temporary basis due to (i) the absence of one or more regular employees (as a result of a leave of absence, vacation, resignation or termination); or (ii) a special project that is intended to be of limited duration. If a temporary employee works for more than six (6) consecutive months (unless the LOA of the person for whom he is substituting is extended to more than six (6) months), or more than twelve (12) consecutive months if substituting for an employee on leave of absence due to work-related injury, his status must be changed to that of a "regular" employee effective on the first day of the month following completion of six consecutive months (or up to twelve (12) months if substituting for an employee on leave of absence due to work-related injury) of service.

(b) A "relief" employee is an employee hired to relieve employees due to absences for periods of short duration (e.g., illness, injury, personal day, holiday, vacation, etc.).

4

(c) A "seasonal" employee is an employee hired to provide services needed as a result of changes in the seasons (e.g., landscaping, storm window or window screen installation, pool readiness, etc.). If a seasonal employee works for more than four (4) consecutive months, his status must be changed to that of a "regular" employee effective on the first day of the month following completion of four consecutive months of service.

(d) No Health, Pension or Training Fund contributions shall be required for Temporary, Substitute, Relief or Seasonal Employees.

## ARTICLE III
### Union Recognition, Security, Hiring and Staffing

**Section 1. Recognition.** The Employer recognizes the Union as the sole bargaining agent for the employees defined or otherwise referred to in this Agreement and shall bargain collectively with the Union as the exclusive collective bargaining agent for such employees with respect to rates of pay, wages, hours and terms and conditions of employment.

**Section 2. Union Shop.** All employees, as a condition of employment, shall be or become members of the Union on the 31st calendar day following the effective date of this Agreement or the 31st day of their employment, whichever is the later, and shall remain members of the Union in good standing during the life of this Agreement as defined by the Labor-Management Relations Act of 1947, as amended. . The Employer shall notify all Benefit Funds about new employees who make the 31st day of employment and shall make all required payments to the Benefit Funds in a timely manner. For the purposes of this Agreement, Union membership shall mean only that the employee has tendered to the Union the lawfully required initiation fees and periodic dues uniformly required as a condition of retaining membership in the Union. The Employer shall discharge an employee for non-payment of Union initiation fees or dues ten (10) days after receipt of written notice by the Union that such employee is not in good standing. Said notice shall state that the employee has previously been given fifteen (15) days' written notice: (a) of the delinquency; (b) the amount and method of computation thereof; (c) that the employee is not in good standing; and (d) that discharge will result at the end of said fifteen (15) day period unless all arrears are paid. The Union will indemnify the Employer against all claims and costs incurred by reason of the Employer's compliance with this section. The Union reserves the right, at its option, to appear and defend all such claims whenever suit is brought against the Employer. Such discharge will not be subject to arbitration.

**Section 3. Dues Deduction.** The Employer shall deduct from the wages of employees who authorize such deductions in writing, monthly Union dues and initiation fees( to be deducted in two (2) installments when billed by the Union) , in advance, in the first pay period of each month. Such deductions shall constitute Trust Funds and shall be forwarded to the Union within twenty (20) days thereafter. In the event such deductions are not paid to the Union within said period, the Employer shall be assessed interest on such deductions at the rate of one percent (1%) per month.

5

# ARTICLE XV
## Grievance and Arbitration Procedure

**Section 1.** Employees within the first ninety (90) days of service (probationary period) shall be entitled to file a grievance for any violation of the Agreement, except for termination.

**Section 2.** STEP 1: Should the Union or any employee covered by this Agreement have any complaint, grievance or dispute concerning or arising from the application of this Agreement or directly related thereto, the Representative of the Union (or designated representative) and the Employee shall meet and discuss the grievance, complaint or dispute with the Building Manager of the Employer (or designated representative) involved within fifteen (15) business days after the grievance, complaint or dispute arose. Failure to act within the time period specified waives the grievance.

**Section 3.** STEP 2: If the matter cannot be settled in above manner (Section 2. Step 1) within Five (5) business days after the meeting, the representative of the Union shall reduce the complaint, grievance or dispute to writing, stating the nature of the dispute and the requested relief, and send a copy thereof to the Employer or its designated representative, requesting that the principal representative(s) of the Employer (other than the representative of the Employer who participated in the STEP 1 meeting) meet with a principal representative of the Union (other than the representative of the Union who participated in the STEP 1 meeting) within ten (10) business days to endeavor to settle the matter. Failure to act within the time period specified waives the grievance.

**Section 4.** STEP 2 A: Should an Employer have any complaint, grievance or dispute concerning or arising from the application of this Agreement it shall have the right within fifteen (15) business days after the grievance, complaint or dispute arose to meet and discuss the matter with a principal officer(s) of the Union to endeavor to settle the matter. Failure to act within the time period specified waives the grievance.

**Section 5.** The Union or the Employer, as the case may be, may within thirty (30) business days after completion of the Section 2 or Section 3 procedure, notify the other party in writing that it wishes to arbitrate the grievance, complaint or dispute. Such notice, in the case of the Union shall be given to its President and in the case of an Employer shall be given to its designated principal representative. The parties shall then attempt to agree upon an arbitrator. In the event that they cannot so agree within a period of five (5) business days, either party may apply to the Federal Mediation and Conciliation Service for a panel of seven (7) impartial arbitrators from which the parties shall select an arbitrator as follows.

(a) Either party shall have the right to strike the entirety of the first panel submitted by the Service and apply for a second panel.

(b) From the panel which is effective the parties shall, commencing with the party requesting arbitration, alternately strike off six (6) names. The remaining arbitrator shall be the arbitrator in the case.

**Section 6.** The arbitrator may not alter, change or in any way expand or

32

contract the provisions of this Agreement. The decision of the arbitrator shall be final and binding on both parties and shall be enforceable in a court of law in accordance with state and federal law.

**Section 7.** The fees and expenses of the arbitrator shall be paid by the party losing the Arbitration. All other expenses of the arbitration shall be assumed by the party incurring them.

**Section 8.** If the parties are unable to resolve a complaint, grievance or dispute concerning the payment of wages or benefits (other than those benefits provided pursuant to the Health Fund, Pension Fund and Training Fund), in lieu of arbitration pursuant to Section 5 through 8 of the Article, either party may apply to the Illinois Department of Labor, Conciliation and Mediation Division, for expedited mediation of the dispute. If the parties are unable to reach agreement on a resolution, the Mediator will be empowered to issue a final and binding resolution, which shall be enforceable in a court of law in the same manner and with the same effect as if the Mediator's resolution was an arbitration award.

**Section 9.** Upon mutual written consent of the parties, time limitation contained in this Article may be extended.

## ARTICLE XVI
## Management Rights

The management of the premises, the direction of the work force and the authority to execute all of the functions and responsibilities of management including, but not limited to, the right to schedule the work to be performed and the assignment of employees to such work, the control and regulation of all equipment and other property of the Employer, the determination, establishment and enforcement of reasonable published rules of safety and conduct, and the right to maintain discipline and efficiency of all employees, are all vested exclusively in the Employer, except that such rights, functions and responsibilities are subject to and shall not be exercised in such manner as to conflict with any of the provisions of this Agreement.

## ARTICLE XVII
## More Favorable Agreements

**Section 1.** No Employer covered by this Agreement shall bargain with or enter into any agreement with any employee/s covered by this Agreement independently of the Union and no agreement made by such Employer in respect to or on behalf of such employee/s with whomsoever made concerning wages, hours or other terms and conditions of employment as provided in this Agreement shall be valid or binding upon the Union unless a principal officer of the Union is a party thereto in writing.

**Section 2.** Should the Union at any time during the term of this Agreement enter into a lawful agreement with any other Employer in respect to premises as defined in this Agreement which Agreement grants more favorable conditions in total to such Employer than those contained in this Agreement for the performance of the same work under the same conditions within the city limits of Chicago, such more favorable conditions shall,

33

## ARTICLE XXIII
## Execution

IN WITNESS WHEREOF the parties hereto, being fully authorized, have hereto set their hands and seals effective as of December 1, 2017.

DATED: 5/3/18

**ABLE Engineering**

**300 N Canal**

By: _____

Jack O'Rourke
Vice President - Midwest
Able Services

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1**

By: _____
Thomas Balanoff, President