UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TREVOR CARMEAN, on behalf of himself and all others similarly situated, | ) ) ) | 20 C 5294 |
| Plaintiff, | ) ) | Judge Gary Feinerman |
| vs. | ) ) | |
| BOZZUTO MANAGEMENT COMPANY and CROWN ENERGY SERVICES, INC., d/b/a Able Engineering Services, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Trevor Carmean brings this putative class action against Bozzuto Management Company and Crown Energy Services, Inc., alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Doc. 55. Defendants move to dismiss the suit under Civil Rules 12(b)(1) and/or 12(b)(6). Docs. 59, 85. The motions are granted.

Carmean is a former employee of a condominium building in Chicago. Doc. 55 at ¶¶ 6, 15. Defendants, the building's property managers, captured and retained his fingerprints— considered "biometric identifiers" under the BIPA, *see* 740 ILCS 14/10—each time he scanned his finger on a KeyTrak scanner at work. Doc. 55 at ¶¶ 1-2, 5, 17-18. Defendants collected the fingerprints of the building's other employees as well. *Id*. at ¶¶ 1-2, 22, 26, 38. Carmean alleges that Defendants violated the BIPA by: (1) failing to develop and maintain a publicly available retention and destruction schedule for the employees' biometric information, *see* 740 ILCS 14/15(a); (2) obtaining their biometric information without making the required disclosures and receiving written releases, *see* 740 ILCS 14/15(b); (3) disclosing, re-disclosing, or disseminating

their biometric information, *see* 740 ILCS 14/15(d); and (4) failing to adequately protect their biometric information, *see* 740 ILCS 14/15(e).  Doc. 55 at ¶¶ 44-60.

At all relevant times, Carmean and the other building employees were members of the Service Employees International Union, Local 1, their "exclusive collective bargaining agent" under the collective bargaining agreement ("CBA") between Local 1 and Crown Energy.  Doc. 60-2 at p. 6, Art. III; *see* Doc. 60-1 at ¶¶ 7-8.  Bozzuto is a party to the CBA as well.  Doc. 86-2 at ¶ 4; Doc. 90 at 2.

Two aspects of the CBA are important here.  First, the CBA includes a mandatory grievance procedure for disputes involving the agreement's application or interpretation.  Doc. 60-2 at pp. 7-8, Art. XV.  For a dispute not concerning wages or benefits, the grievance procedure culminates in arbitration.  *Ibid.*  Second, the CBA includes a "Management Rights" clause, which states:

> The management of the premises, the direction of the work force and the authority to execute all of the functions and responsibilities of management including, but not limited to, the right to schedule the work to be performed and the assignment of employees to such work, the control and regulation of all equipment and other property of the Employer, the determination, establishment and enforcement of reasonable published rules of safety and conduct, and the right to maintain discipline and efficiency of all employees, are all vested exclusively in the Employer, except that such rights, functions and responsibilities are subject to and shall not be exercised in such manner as to conflict with any of the provisions of this Agreement.

*Id*. at p. 8, Art. XVI.

Citing *Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), Defendants contend that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, completely preempts Carmean's BIPA claims because resolving those claims would require the court to interpret the CBA's management rights clause.  Doc. 60 at 3-7; Doc. 86 at 9-14.  They

are correct, but before proceeding to explain why, a short detour concerning the appropriate procedural vehicle is in order.

As noted, Defendants move for dismissal under Rules 12(b)(1) and/or 12(b)(6). Doc. 59 at 1; Doc. 60 at 1-2, 3-14; Doc. 85 at 1; Doc. 86 at 4-6, 9-14. To support dismissal under Rule 12(b)(1), Defendants rely on a passage in *Miller* stating that the dismissal of a state law claim as completely preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*—which, as explained below, has the same preemption standard as the LMRA's—should be "labeled either as a judgment on the pleadings [under Rule 12(c)], or a dismissal for lack of subject-matter jurisdiction [under Rule 12(b)(1)]." *Miller*, 926 F.3d at 901; *see* Doc. 60 at 4; Doc. 86 at 4-5.

Carmean counters that Rule 12(b)(1) is the wrong procedural vehicle because § 301 of the LMRA operates as a grant of—not a restriction on—federal jurisdiction. *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."). As Carmean sees it, to hold a claim completely preempted by the LMRA does not mean that the court lacks jurisdiction where an independent basis of jurisdiction—here, according to Carmean, the diversity jurisdiction, Doc. 55 at ¶¶ 10-12—exists. Doc. 72 at 7-9; Doc. 90 at 3-4. Thus, Carmean concludes, Defendants cannot move to dismiss under Rule 12(b)(1) and, because their arguments rely on materials outside the pleadings—the CBA, the contract making Bozzuto a party to the CBA, and various declarations—the court must convert their Rule 12(b)(6) motions into Rule 56 motions for summary judgment. *Ibid*.

3

Carmean's position finds support in § 301's text and *Healy v. Metropolitan Pier and Exposition Authority*, 804 F.3d 836 (7th Cir. 2015), where the Seventh Circuit—four years before issuing *Miller*—stated that it "deem[s] a dismissal of preempted state law claims [under the LMRA] a 12(b)(6) dismissal for failure to state a claim, a dismissal on the merits." *Id*. at 840. It is unnecessary to run this issue to ground, for as the Seventh Circuit observed in *Miller*, it does not matter whether Rule 12(b)(1) or Rule 12(b)(6) (or Rule 12(c)) provides the proper basis for dismissal because "either a substantive or a jurisdictional label ends the litigation … and forecloses its continuation in any other judicial forum." 926 F.3d at 901.

Section 301 of the LMRA completely preempts state law claims "founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (internal quotation marks omitted); *see also Nelson v. Stewart*, 422 F.3d 463, 467-69 (7th Cir. 2005). The RLA, which applies to unionized employees in the railroad and airline sectors, does so as well. *See Hughes v. United Air Lines, Inc.*, 634 F.3d 393-95 (7th Cir. 2011).

In *Miller*, the Seventh Circuit held that the RLA completely preempted BIPA claims brought by unionized airline employees whose employers required them to scan their fingerprints to clock in and out of work. 926 F.3d at 903-05. The Seventh Circuit began by stressing that "there can be no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers—[and] is, indeed, a mandatory subject of bargaining." *Id*. at 903. Given this premise, the Seventh Circuit held that the RLA completely preempted the employees' BIPA claims because resolving them would require the court to interpret the "management-rights" clauses of the CBAs between the airlines and the employees' unions—and, specifically,

to decide whether the unions, through those clauses, consented to the collection and use of the employees' biometric data. *Id*. at 903-05.

*Miller* is dispositive here. The question whether Defendants violated the BIPA turns, in substantial part and perhaps entirely, on the extent to which Local 1 consented—via the CBA's management rights clause—to the use, retention, and disclosure of Carmean's and the other building employees' biometric information. As the Seventh Circuit put it: "It is not possible even in principle to litigate a dispute about how an [employer] acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf." *Id*. at 904.

Carmean argues that *Miller* does not govern here because it found complete preemption under the RLA, not the LMRA. Doc. 72 at 16-18; Doc. 90 at 4-5. As the Supreme Court has explained, however, the RLA preemption standard is "virtually identical to the preemption standard … employ[ed] in cases involving § 301 of the LMRA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). And the Seventh Circuit has all but held that *Miller* applies with equal force to cases where LMRA preemption is invoked. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1156 (7th Cir. 2020) (declining to hold that the LMRA completely preempted a unionized plaintiff's BIPA claim because the district court did not address the preemption issue and the parties did not brief it on appeal, but stating that "the answer appears to flow directly from *Miller*"). *Miller* accordingly governs this case. *See Barton v. Swan Surfaces, LLC*, 2021 WL 793983, at *3-7 (S.D. Ill. Mar. 2, 2021) (applying *Miller* to hold that the plaintiff's BIPA claims were completely preempted by § 301 of the LMRA); *Fernandez v. Kerry, Inc.*, 2020 WL 7027587, at *3-6 (N.D. Ill. Nov. 30, 2020) (same); *Williams v. Jackson Park SLF, LLC*, 2020 WL 5702294, at *2-3 (N.D. Ill. Sept. 24, 2020) (same); *Gray v. Univ. of*

*Chi. Med. Ctr., Inc.*, 2020 WL 1445608, at *3-5 (N.D. Ill. Mar. 25, 2020) (same); *Peatry v.*

*Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *3-4 (N.D. Ill. Feb. 26, 2020) (same).

Carmean next argues that *Miller* is "factually distinguishable" because this case involves

different biometric technology and because he, unlike the *Miller* plaintiffs, does not dispute that

Defendants had the authority to implement a biometric access control system and that Local 1 is

his "legally authorized representative" within the meaning of Section 15(b) of the BIPA, 740

ILCS 14/15(b).  Doc. 72 at 18-19.  Those distinctions are immaterial.  What matters here is that

the management rights clause in Carmean's CBA is phrased in similarly broad terms as the

management rights clauses in *Miller*.  *See Johnson v. United Air Lines, Inc.*, 2018 WL 3636556,

at *1 (N.D. Ill. July 31, 2018) ("The CBA … provides that '[United Airlines] has the sole and

exclusive right to manage, operate, and maintain the efficiency of the business and working

forces,' including the right to 'maintain discipline and efficiency in the Company's facilities' and

'to determine the type and location of facilities [and] equipment … the Company will utilize.'"),

*vacated*, 2019 WL 1239723 (N.D. Ill. Mar. 18, 2019), *vacated and remanded sub nom. Miller v.*

*Sw. Airlines Co.*, 926 F.3d 898 (7th Cir. 2019); *Miller v. Sw. Airlines Co.*, 2018 WL 4030590, at

*5 (N.D. Ill. Aug. 23, 2018) ("[U]nder the terms of the CBAs, … [Southwest Airlines] broadly

retains the 'right to manage and direct the work force' subject to the labor agreements."), *aff'd*,

926 F.3d 898 (7th Cir. 2019).  The Seventh Circuit's analysis of complete preemption in *Miller*

thus applies with equal force here.

Finally, Carmean essentially urges this court to ignore *Miller* on the ground that it is

inconsistent with Supreme Court and prior Seventh Circuit precedent.  Doc. 72 at 17-18.  That is

something this court cannot do.  *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029

(7th Cir. 2004) ("Just as the court of appeals must follow decisions of the Supreme Court

whether or not we agree with them, so district judges must follow the decisions of [the Seventh Circuit] whether or not they agree.") (citations omitted).

In sum, because resolving Carmean's BIPA claims would "necessarily entail[] the interpretation or administration" of his CBA's management rights clause, they are completely preempted by § 301 of the LMRA. *See Miller*, 926 F.3d at 904. As to what happens next, a state law claim completely preempted by § 301 "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citation omitted). Seventh Circuit precedent identifies the preferred course as treating the preempted claim as a § 301 claim. *See Healy*, 804 F.3d at 840 ("Here, § 301 preempts the state law tortious interference claim and converts it into a § 301 claim."); *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 501 (7th Cir. 1996) ("Because this lawsuit arose under § 301, it is considered a suit for breach of the CBA."); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3 1176, 1180 (7th Cir. 1993) ("[I]f the plaintiff's claim, ostensibly based on state law, cannot be adjudicated without interpretation of the collective bargaining agreement, the claim turns into a federal claim that the agreement itself has been violated."); *Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 573-74 (7th Cir. 1989) ("Because we have determined that Ms. Douglas' claim for intentional infliction of emotional distress is preempted by section 301, we must now determine whether the district court correctly dismissed the claim for failure to exhaust grievance and arbitration remedies available under the collective bargaining agreement.").

Because his BIPA claims are in fact § 301 claims, Carmean must first have "grieve[d] the dispute using the grievance process outlined in the [CBA]." *Healy*, 804 F.3d at 843; *see* Doc. 60-2 at pp. 7-8, Art. XV (the mandatory grievance procedure). Because Carmean has not done so, and because he concedes that none of the exceptions to the grievance exhaustion rule applies,

Doc. 72 at 7-8, his claims are dismissed without prejudice for failure to exhaust.  *See Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims."); *see also Barton*, 2021 WL 793983, at *7 (dismissing the suit "without prejudice" for failure to exhaust the CBA's grievance procedure); *Fernandez*, 2020 WL 7027587, at *8 & n.6 (same); *Williams*, 2020 WL 5702294, at *4-5 (same); *Gray*, 2020 WL 1445608, at *5 (same); *Peatry*, 2020 WL 919202, at *4 (same).

June 15, 2021

_____
United States District Judge